UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANTONIO OLIVAN,                                              **FIRST AMENDED**
                                                             **COMPLAINT**

                                                             **21 cv 7183 (RPK) (RLM)**
                                                             **ECF Case**

                                Plaintiff,

     v.

CITY OF NEW YORK,
MICHAEL KOBUS,                                               **JURY TRIAL DEMANDED**
RICHARD RODRIGUEZ,
UNDERCOVER OFFICER # 331,
CHRISTOPHER GREINER,
JOEY MORALES, and
JAMES GATTO,
in their individual and official capacities,

                               Defendants.
-------------------------------------------------------------x

Plaintiff Antonio Olivan, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.  This action arises from various civil rights violations against Antonio Olivan ("Plaintiff" or "Mr. Olivan") by New York City police officers. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for unlawful strip search, denial of the right to a fair trial, failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff is a Latino male and resident of Brooklyn.

6. The individually named defendants – Detective Michael Kobus (Shield # 4926) ("Det. Kobus"), Undercover Officer No. 331 ("UC 331"), Officer Richard Rodriguez (Shield #5376) ("PO Rodriguez"), Detective Christopher Greiner (Shield # 1425) ("Det. Greiner"), Detective Joey Morales (Shield # 6018) ("Det. Morales"), and Sergeant James Gatto (Shield # 1428) ("Sgt. Gatto") – are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of the City of New York ("City").

## STATEMENT OF FACTS

8. In the early morning hours of January 26, 2019, Plaintiff was with his brother and some friends at Candelas Restaurant – 4413 4th Avenue in the Sunset Park neighborhood of Brooklyn.

9. Around 3:00 a.m., an undercover police officer – UC 331 – approached Plaintiff and asked if he had any cocaine.

10. Plaintiff had a small amount of cocaine (less than a gram) and gave UC 331 some cocaine.

11. UC 331 attempted to give Plaintiff money – but Plaintiff refused to accept any money.

12. About ten minutes later, a group of Police Officers – including Det. Kobus – entered the restaurant and arrested Plaintiff.

13. Plaintiff's brother, Eric Olivan, was also arrested.

14. UC 331 falsely reported that Plaintiff sold cocaine to him in exchange for $40.

15. UC 331 also falsely reported that Plaintiff's brother participated in this drug transaction.

16. Plaintiff was transported to the NYPD 72nd Precinct.

17. Plaintiff was assigned arrest number K19604911

18. At the 72nd Precinct, Plaintiff was searched by PO Rodriguez.

19. Plaintiff was in possession of money and a small quantity of cocaine – but none of his money included the pre-marked $40 that UC 331 claimed he had paid Plaintiff.

20. Plaintiff was then strip searched.

21. Plaintiff was strip searched in a bathroom in the precinct.

22. Det. Greiner and Det. Morales strip searched Plaintiff.

23. Sgt. Gatto authorized the strip search of Plaintiff.

24. Det. Greiner and Det. Morales made Plaintiff remove his clothing.

25. Det. Greiner and Det. Morales made Plaintiff squat and cough with no clothing over his buttocks and genitals.

26. Plaintiff had nothing hidden in any body cavity.

27. Plaintiff did nothing to indicate that he was hiding contraband in his anus.

28. Although Plaintiff merely possessed a small quantity of cocaine (a misdemeanor), the individual defendants decided to inform the Kings County District Attorney's Office that Plaintiff sold cocaine to UC 331.

29. While mere possession of the small amount of cocaine would have made Plaintiff eligible for a Desk Appearance Ticket ("DAT") under New York Criminal Procedure Law, the charge of selling cocaine did not make Plaintiff eligible for a Desk Appearance Ticket. *See generally* NYPD Patrol Guide Procedure No. 208-27 – Desk Appearance Ticket – General Procedure.

30. At the time of Plaintiff's arrest in January 2019, NYPD officers could exercise their discretion to issue DATs in lieu of detention, enabling arrestees to be released from custody sooner than if they are detained through their arraignments.

31. At the time of Plaintiff's arrest, moreover, arrestees were eligible for DATs if they were charged with misdemeanors or class E felonies, and also satisfied other criteria, such as having a verified New York address and no outstanding warrants. If Mr. Olivan were charged only with the misdemeanor of cocaine possession, he would have satisfied the criteria making him eligible for a DAT.

32. New York police officers had exercised their discretion to issue DATs to defendants arrested for and charged with possession of controlled substances in violation of New York Penal Law Section ("PL") 220.03. *See e.g. People v. David*, 44 Misc.3d 1212(A) (N.Y. Cnty. Crim. Ct. Jan. 22, 2014); *People v. Rodriguez*, 27 Misc. 3d 135(A) (2d. Dept. 2010); *People v. Barbara*, 152 Misc.2d 104 (Queens Cnty. Crim. Ct. Aug. 16, 1991); *People v. Garrett*, 171 A.D. 2d 153 (2nd Dept. 1991); *Gaul v. Ward*, 159 A.D.2d 380 (1st Dept. 1990); *People v. Fletcher*, 113 Misc.2d 5 (N.Y. Cnty. Sup. Ct. Feb. 26, 1982).

33. Rather than being issued a DAT, Plaintiff was booked and processed at the police precinct, then transported to Central Booking in downtown Brooklyn, then arraigned in the late evening of January 26, 2019 in Kings County Criminal Court.

34. Based on the fabricated information provided by the individual defendants, the Kings County District Attorney's Office charged Plaintiff with Criminal sale of a controlled substance in the third degree under PL 220.39(1), and Criminal possession of a controlled substance (with the intent to sell) in the third degree under PL 220.16(1). Class B felonies are punishable in New York by up to 25 years in prison, and not less than one year in prison.

35. The Criminal Court complaint falsely alleged that at 3:05 a.m. inside 4413 4th Avenue in Brooklyn, UC 331 handed Plaintiff money, at which point Plaintiff touched hands with his brother Eric then handed UC 331 a ziplock bag continuing cocaine.

36. The Criminal Court Complaint was sworn to by Det. Kobus and based on fabrications provided him, UC 331, and PO Rodriguez.

37. The individual defendants knew that Plaintiff did not sell UC 331 cocaine.

38. The Criminal Court Judge released Plaintiff, but ordered him to return to Criminal Court; the consequence of not doing so would be the issuance of a bench warrant and possibly monetary bail.

39. Plaintiff's brother Eric was also prosecuted (Docket No. CR-003596-19KN) for allegedly facilitating Plaintiff's drug sale.

40. As ordered, Plaintiff returned to Criminal Court until his case was over.

41. During the course of the prosecution, UC 331 signed a supporting deposition verifying that the felonious allegations in the criminal court complaint were accurate, and he forwarded this signed supporting deposition to the District Attorney's office.

42. On May 8, 2019, Plaintiff resolved his prosecution by pleading guilty to the violation of disorderly conduct (N.Y. Penal Law Section 240.20).

43. All felony charges were dismissed.

44. As a result of the strip search and fabrication of evidence, Plaintiff suffered loss of liberty, and psychological and emotional distress.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

45. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and

6

scope of their duties.

46. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

47. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

48. Upon information and belief, the individual defendants' aforementioned abuse of power – in the forms of unlawful strip-search and mendacity – was not an isolated event. There were other instances of such misconduct by the individual defendants that Defendant City knew or should have known about.

49. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**NYPD'S STRIP SEARCH POLICY**

50. Moreover, there has been an over-aggressive and illegal strip search policy in the NYPD, a policy that favors strip-searching low-level, mere possessors of drugs.

51. If the aggressive strip-searching is not an explicit policy of the NYPD, then it is a rampant and recklessly tolerated practice, flagrantly abused, sadistically embraced as a humiliating practice that rarely bears fruit.

52. Since 2014, Plaintiff's lawyer alone – Cyrus Joubin – has filed and settled seven other lawsuits in the Southern District of New York against NYPD officers claiming illegal anal cavity searches on the plaintiffs.

53. Those lawsuits – all of which settled with the illegal strip search claims intact – included <u>Lorenzo v. City of New York, et al.</u>, 14 cv 9865 (ALC); <u>Siler v. City of New York, et al.</u>, 15 cv 189 (ER); <u>Beverly v. City of New York, et al.</u>, 15 cv 2315 (GHW); <u>Ramirez v. City of New York, et al.</u>, 15 cv 1589 (PAE); and <u>Williams v. City of New York, et al.</u>, 15 cv 8008 (DLC). In <u>Ortiz v. City of New York</u>, 16 cv 2922 (LTS), as well as <u>Stoute v. City of New York</u>, 18 cv 5004 (AKH), plaintiffs Ortiz and Stoute accepted Rule 68 Offers of Judgment. In none of those cases was any contraband discovered in the plaintiffs' body cavities.

54. In addition, Cyrus Joubin has settled numerous other claims against the City of New York involving illegal strip searches – including <u>Romulo Paulino v. City of New York</u> (BLA # 2016-PI-017471), <u>Kenneth McRae v. City of New York</u> (BLA # 2016-PI-026652), <u>Michael Johnson v. City of New York</u> (BLA # 2016-PI-016917), <u>Joshua Williams v. City of New York</u> (BLA # 2018-PI-014953), and <u>Katiria Martinez v. City of New York</u> (BLA # 2018-PI-019512) – which claims were settled with the New York City Comptroller prior to filing suit.

55. There is no documentation that NYPD officers must complete when conducting a strip search; rather, officers merely check a box, and there is no oversight or scrutiny to ensure that officers have a lawful basis to perform strip searches and that officers truthfully indicate that they performed strip searches.

56. Because of this lack of accountability, unlawful strip searches have become a widespread custom and practice in the NYPD, as evidenced by numerous civil rights lawsuits alleging unlawful body cavity searches. *See e.g. Hill v. City of New York*, 19-CV-7882 (PKC); *see also,* "Data suggests thousands of cases of New York police officers breaking department guidelines, but consequences are rare," by Tana Ganeva, published Jun 21, 2021, available at businessinsider.com/new-york-police-break-department-guidelines-often-without-consequence-2021-6 (noting "multiple lawsuits allege that officers ignored [strip search] protocols, conducting strip searches on site, in front of other officers and civilians, and without meeting the standard for proving the invasive search was necessary. While some are pending, the ones that have been settled have collectively resulted in payments of almost half a million dollars to plaintiffs.").

57. There is no evidence that the NYPD has done anything to correct what has been deemed a "Strip Search Problem." *See* "The NYPD Has a Strip Search Problem," By Anna North, published Feb. 21, 2012, available at jezebel.com/the-nypd-has-a-strip-search-problem-5885116; "Man arrested, strip-searched after photographing NYPD wins $125,000," by David Kravets, published Aug. 19, 2014, available at artstechnica.com/tech-policy/2014/08/man-arrested-strip-searched-after-photographing-nypd-wins-125000/; "Man Sues NYPD Over Cop With 'Fetish' for Cavity Searches," by Nathan Tempey, published February 14, 2017, available at gothamist.com/news/man-sues-nypd-over-cop-with-fetish-for-cavity-searches; "This NYPD cop kept being promoted despite 'inappropriate strip searches' of Black men," by Francis Akhalbey, published Sept. 11, 2020, available at face2faceafrica.com/article/this-nypd-cop-kept-being-promoted-despite-inappropriate-strip-searches-of-black-men.

**DAMAGES**

58. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

   b. Severe emotional trauma, distress, degradation, and suffering.

**SECTION 1983 CLAIMS**

**FIRST CLAIM**

**Denial of the Right to a Fair Trial Under Section 1983**

59. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

60. By the actions described, the Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to a fair trial.

61. The individual defendants deliberately forwarded fabricated information – specifically, false allegations that Plaintiff sold cocaine – to the Kings County District Attorney's Office.

62. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SECOND CLAIM**

**Unlawful Strip Search Under Section 1983**

63. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

64. By the actions described, the Defendants Kobus and Rodriguez deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of unlawful searches of his person.

65. The body cavity search of Plaintiff – an extreme invasion of privacy and bodily dignity – took place without probable cause to believe that contraband was secreted in his anus.

66. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

67. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

69. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

70. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Municipal Liability Under Section 1983

71. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

72. By the actions described, the Defendant City deprived Plaintiff of his Constitutional rights through its failure to train, supervise, and discipline malicious and mendacious officers; and through its tolerance of illegal body cavity searches by NYPD officers.

73. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a. An order awarding compensatory damages for Plaintiff Antonio Olivan in an amount to be determined at trial;

b. An order awarding punitive damages in an amount to be determined at trial;

c. An order enjoining and directing Defendant City of New York to establish clear guidelines in the NYPD's use of body cavity searches, including a requirement that officers document and articulate the reason for each body cavity search;

d. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

e. Such other and further relief as this Court may deem appropriate.

| | |
|---|---|
| DATED: | July 18, 2022<br>New York, New York |

_____
CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
Attorney for Antonio Olivan