UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ANTONIO OLIVAN,

                      Plaintiff,

              v.                           **MEMORANDUM AND ORDER**
                                                  21-CV-7183 (RPK) (RLM)

CITY OF NEW YORK, MICHAEL
KOBUS, RICHARD RODRIGUEZ,
UNDERCOVER OFFICER # 331,
CHRISTOPHER GREINER, JOEY
MORALES, and JAMES GATTO,

                      Defendants.
-----------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Antonio Olivan filed this lawsuit under 42 U.S.C. § 1983, claiming that he was deprived of his right to a fair trial and his right to be free from unlawful searches under the Fourth Amendment. Defendants have moved for summary judgment on all claims, while plaintiff has requested summary judgment on his Fourth Amendment claims. For the reasons set forth below, defendants are entitled to summary judgment on all plaintiff's claims against the individual defendants, and the parties are directed to file supplemental letters within thirty days addressing plaintiff's remaining Fourth Amendment claim against the City of New York.

## BACKGROUND

### I. Factual Background

      The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

      In January 2019, an undercover officer identified in the complaint as "Undercover Officer No. 331" approached plaintiff at a restaurant in Brooklyn. *See* Pl.'s Rule 56.1 Counterstatement ("Pl.'s Statement") ¶¶ 1–2 (Dkt. #41). Plaintiff provided the undercover

1

officer a bag of cocaine, which was packaged "[i]n a small pill bag." Decl. of Cyrus Joubin (Dkt. #42), Ex. 2 ("Pl.'s Dep."), at 22:06 (Dkt. #42-2); *see* Decl. of Gregory Accarino (Dkt. #39), Ex. C (Dkt. #39-4) (photo). Defendants allege that plaintiff accepted money from the undercover officer in exchange for the drugs, and that prerecorded buy money was recovered from plaintiff's person after his arrest. *See* Defs.' Rule 56.1 Statement ("Defs.' Statement") ¶¶ 5–6 (Dkt. #38). Plaintiff disputes these claims, asserting that he accepted no money for the drugs and that the $141 recovered from his person was not obtained in connection with any criminal activity. Pl.'s Statement ¶¶ 5–6.

The parties agree that officers recovered some additional drugs from plaintiff's person but disagree on details of quantity and timing. Defendants allege that Detective Rodriguez recovered three additional bags of cocaine from plaintiff's pants pocket during a search after plaintiff was transported to a police precinct. Defs.' Resp. to Pl.'s Statement ¶ 21 (Dkt. # 44). Plaintiff alleges that officers recovered only one additional "small baggie / pill bag of cocaine" from his pants pocket, and that they did so while he was still at the restaurant, before being transported to the precinct. Pl.'s Statement ¶ 4.

Once at the precinct, at Detective Kobus's request, Sergeant James Gatto authorized a visual body cavity search of plaintiff. Decl. of Cyrus Joubin, Ex. 3 ("Dep. of Det. Michael Kobus"), at 54:07 (Dkt. #42-3); Defs.' Resp. to Pl.'s Statement ¶ 23. Detectives Joey Morales and Christopher Greiner then conducted the search in a private bathroom, in the presence of Detective Kobus. Pl.'s Statement ¶ 23; Defs.' Resp. to Pl.'s Statement ¶ 23. According to plaintiff, he was required to strip naked in front of the officers, squat, cough, and lift his scrotum. Pl.'s Statement ¶ 22. The search did not recover any contraband. *Id.* ¶ 24; Defs.' Resp. to Pl.'s Statement ¶ 24.

Plaintiff was transported to Central Booking. Pl.'s Statement ¶¶ 27, 30; Defs.' Resp. to Pl.'s Statement ¶¶ 27, 30. Detective Kobus then spoke with prosecutors from the Kings County District Attorney's Office, who drafted a criminal complaint against plaintiff. Pl.'s Statement ¶ 29; Defs.' Resp. to Pl.'s Statement ¶ 29. Plaintiff alleges that Detective Kobus falsely told the District Attorney's Office that police officers recovered prerecorded buy money from plaintiff and "provided inconsistent information about the amount of pre-recorded buy money and who recovered it." Pl.'s Statement ¶ 30.

The criminal complaint charged plaintiff with one count of felony criminal sale of a controlled substance in the third degree, one count of felony criminal possession of a controlled substance in the third degree, and two counts of misdemeanor criminal possession of a controlled substance in the seventh degree. *Id.* ¶ 9; Defs.' Statement ¶ 9. Plaintiff ultimately pleaded guilty to disorderly conduct in satisfaction of all charges. Pl.'s Statement ¶ 11; Defs.' Statement ¶ 11.

## II. This Lawsuit

Plaintiff filed this suit under 42 U.S.C. § 1983 against Detective Kobus, Detective Rodriguez, Undercover Officer No. 331, Detective Greiner, Detective Morales, Sergeant Gatto, and the City of New York. *See* Am. Compl. (Dkt. #21). He brings various claims. First, he alleges that Detective Kobus and Undercover Officer No. 331 deprived him his right to a fair trial by "deliberately forward[ing] fabricated information—specifically, false allegations that [p]laintiff sold cocaine—to the King's County District Attorney's Office." *Id.* ¶ 61; *see* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 5 (Dkt. #40) (clarifying plaintiff's theory). Second, he alleges that Detective Kobus, Sergeant Gatto, Detective Greiner, and Detective Morales violated his Fourth Amendment right to be free from unreasonable searches by requesting, authorizing, and conducting the body cavity search. Am. Compl. ¶¶ 63–

3

66; *see* Pl.'s Opp'n 10 (clarifying plaintiff's theory). Third, he alleges that even if Detective Kobus is not directly liable for the search, he is liable for his failure to intervene. Am. Compl. ¶¶ 68–69; *see* Pl.'s Opp'n 14 (clarifying plaintiff's theory). Fourth, he alleges that the City of New York is also liable for the search under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Am. Compl. ¶ 72; *see* Pl.'s Opp'n 15 (clarifying plaintiff's theory).

Defendants have moved for summary judgment on all claims. *See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' MSJ") (Dkt. #37). In plaintiff's opposition brief, plaintiff contends that he should be granted summary judgment on his Fourth Amendment claims. *See* Pl.'s Opp'n 1–2.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under the governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of material fact, I evaluate the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quotation marks, alteration, and citation omitted). A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). In other words, "[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980) (quotation marks and citation omitted).

## DISCUSSION

Defendants are entitled to summary judgment on plaintiff's fair trial claim as well as his Fourth Amendment claims against the individual defendants. The parties are directed to file supplemental letters within thirty days concerning plaintiff's Fourth Amendment claim against the City of New York.

### I. Plaintiff's Fair-Trial Claim

Defendants are entitled to summary judgment on plaintiff's claim that Detective Kobus and Undercover Officer No. 331 deprived him of his right to a fair trial by "forward[ing] fabricated information—specifically, false allegations that Plaintiff sold cocaine—to the Kings County District Attorney's Office." Am. Compl. ¶ 61; *see* Pl.'s Opp'n 5 (clarifying that plaintiff's fair trial claims are brought against these defendants).

A person is denied the right to a fair trial when "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). The Second Circuit has

5

emphasized that "the requirements that the information be both false and likely to influence a jury's decision constrain the types of information that can serve as the basis" for such a claim. *Id.* at 280. Fabricated information is "not likely to influence the jury's verdict" when "the undisputed evidence" is "sufficient to find [p]laintiff guilty" on the charges brought against him. *Soomro v. City of New York*, 739 F. App'x 51, 54 (2d Cir. 2018); *see, e.g.*, *Marom v. Blanco*, No. 15-CV-2017 (PKC), 2019 WL 3338141, at *8 (S.D.N.Y. July 25, 2019) (dismissing fair trial claim where the allegedly fabricated information was "not . . . likely to influence a jury's decision as to whether [plaintiff] committed the charged offenses").

Plaintiff has not raised a genuine issue of material fact as to whether he was denied his right to a fair trial, because, at minimum, plaintiff has not put forward evidence of the fabrication of any evidence likely to influence a jury's verdict. Plaintiff contends that Undercover Officer No. 331 falsely stated that prerecorded buy money was recovered from plaintiff and that Detective Kobus forwarded the false statement to prosecutors. Pl.'s Opp'n 5. Even assuming the statement is false, the undisputed evidence in the record is sufficient for a jury to find plaintiff guilty on the charges brought against him.

Plaintiff does not contest that the undisputed evidence supports the misdemeanor charges and the felony possession charge against him. *See id.* at 10 (arguing that plaintiff's "detention was caused by the fabrication of [p]laintiff's cocaine selling rather than the truth of his mere cocaine possession"). Instead, he claims that the fabricated evidence was material to his felony sale charge. *See id.* at 7. But plaintiff's claim falls short because the undisputed evidence also supports the felony sale charge, irrespective of whether plaintiff accepted money for the drugs that he supplied to the undercover officer. Under New York law, a "defendant may be guilty as a seller even if he does not receive any consideration for the transfer of drugs to the buyer."

*People v. Starling*, 650 N.E.2d 387, 390 (N.Y. 1995) (quoting *People v. Herring*, 632 N.E.2d 1272, 1273 (N.Y. 1994)). In other words, "proof of the transfer of the drugs alone may suffice to prove the sale." *Ibid.* (quoting *People v. Lam Lek Chong*, 379 N.E.2d 200, 205 (N.Y. 1978)). Here, plaintiff does not deny giving cocaine to Undercover Officer No. 331. *See* Pl.'s Statement ¶ 2.

While plaintiff argues that, under New York law, a defendant cannot be charged for felony sale of a controlled substance unless he has received some sort of consideration, Pl.'s Opp'n 7–8, the case he cites in support of that proposition, *People v. Andujas*, 588 N.E.2d 754 (N.Y. 1992), concerns the availability of the affirmative "agency defense," *id.* at 755. It did not hold that a defendant must receive consideration to be charged with felony sale of a controlled substance. *See ibid.* And more recent cases confirm that no consideration is required. *See Starling*, 650 N.E.2d at 390 ("[D]efendant may be guilty as a seller even if he does not receive any consideration for the transfer." (quoting *Herring*, 632 N.E.2d at 1273)).

"[T]he undisputed evidence" is therefore "sufficient to find [p]laintiff guilty" on the felony sale charge, *Soomro*, 739 F. App'x at 54, and defendants are accordingly entitled to summary judgment on plaintiff's fair-trial claim.

## II. Plaintiff's Fourth Amendment Claims Against the Individual Defendants

Detectives Kobus, Sergeant Gatto, Detective Grenier, and Detective Morales are entitled to summary judgment on plaintiff's Fourth Amendment claims against them based on qualified immunity because it was not clearly established—even on the version of the facts most favorable to plaintiff—that officers lacked reasonable suspicion to conduct a body cavity search under the circumstances presented in this case.

An officer can be held personally liable under Section 1983 only if his conduct violated

"clearly established" law. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation omitted). It was clearly established at the time of the search in this case that "a visual body cavity search conducted as an incident to a lawful arrest for an offense must be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity." *Sloley v. VamBramer*, 945 F.3d 30, 38 (2d Cir. 2019) (quotation marks and citation omitted); *see id.* at 42 (holding that this principle was clearly established by 2013); *Wheeler v. Artola*, 852 F. App'x 589, 592 (2d Cir. 2021) (same).

"Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quotation marks and citations omitted). Such suspicion is assessed based on "the totality of the circumstances—the whole picture," *Navarette v. California*, 572 U.S. 393 (citation omitted), 397 (2014), including "commonsense judgments and inferences about human behavior," *Glover*, 140 S. Ct. at 1188 (citation omitted).

The qualified immunity standard affords a measure of protection to officers seeking to apply this legal standard in the field. "[W]hen the Fourth Amendment requires an officer to have reasonable suspicion before undertaking a search, an officer is entitled to qualified immunity unless [a court] can say on the somewhat unique facts before [it] that it is clearly established that no reasonable suspicion justified a visual body cavity search." *Slolely*, 945 F.3d at 43 (quotation marks and citation omitted). Accordingly, an officer can be personally liable for a visual body cavity search only if "no reasonable officers could have believed that there was reasonable suspicion" that the arrestee was secreting evidence inside a body cavity. *Ibid.* (quotation marks and citation omitted).

Typically, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). But "the absence of a decision by [the Second Circuit] or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established so long as preexisting law clearly foreshadows a particular ruling on the issue." *Gorman v. Rensselaer County*, 910 F.3d 40, 45 (2d Cir. 2018).

Defendants are entitled to qualified immunity because it would not have been apparent to every reasonable officer in 2019 that the requisite reasonable suspicion was lacking in this case. By 2019, it was clearly established that reasonable suspicion to visually inspect a body cavity does not exist in *every* case in which a person is arrested for a felony. *See Slolely*, 945 F.3d at 38. But no Supreme Court or Second Circuit decision had rejected a finding of reasonable suspicion for a drug cavity search on facts like those here, involving an arrest after a hand-to-hand drug transaction with an undercover officer and the recovery of additional drugs on the arrestee's person.

And neither Supreme Court nor Second Circuit precedent in 2019 "clearly foreshadow[ed]" that reasonable suspicion for a body cavity search would be absent on those specific facts, *Gorman*, 910 F.3d at 45. To the contrary, the Second Circuit has recognized an arrest on a drug charge as a factor weighing in favor of a reasonable suspicion to conduct a search of this type, *see Sloley*, 945 F.3d at 39, "given the propensity of drug dealers to conceal contraband in their body cavities," *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013); *see Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983) (describing "narcotics violations" as one of the "kinds of crimes, unlike traffic or other minor offenses, that might give rise to a reasonable belief that the . . . arrestee was concealing an item in a body

9

cavity").

And an officer could reasonably determine that the more specific circumstances surrounding plaintiff's conduct contributed to reasonable suspicion. Plaintiff's drug crime was a hands-on one, in which he personally supplied an undercover officer with drugs, and the drugs were stored in the type of small pill baggie that could easily be secreted in a body cavity. Pl.'s Statement ¶ 2. Further, while plaintiff asserts that his having at least one additional baggie of drugs in his pants pocket at the time of his arrest undermines reasonable suspicion, I cannot say that no reasonable officer would draw the contrary inference—that a drug distributor's having a small quantity of drugs in a pocket for ready distribution increases the likelihood of his having additional drugs secreted elsewhere for safekeeping. After all, the Second Circuit has described "[d]iscovery of incriminating matter during routine searches"—like the search of plaintiff's pockets incident to arrest here—as supporting reasonable suspicion for a strip search, rather than undermining it. *United States v. Asbury*, 586 F.2d 973, 977 (2d Cir. 1978); *see Weber v. Dell*, 804 F.2d 796, 802 (1986) (analyzing strip and visual body cavity searches under the same reasonable suspicion standard).

To be sure, this case lacks many of the more direct indicia of concealment highlighted in prior decisions. *See Slolely*, 945 F.3d at 46 (describing evidence that a suspect "was fidgeting or moved about suspiciously," "reached or attempted to reach his hands down his pants," or was "observed . . . putting drugs down his pants or retrieving drugs (or anything else) from inside his pants" as "example[s]" of evidence supporting reasonable suspicion). And this conclusion as to qualified immunity does not resolve the more difficult question of whether officers in fact had reasonable suspicion for this search. But whether the defendant officers are personally liable for damages based on this search turns only on whether it was clearly established in 2019 that the

10

quantum of individualized suspicion needed to perform a visual body cavity inspection was absent on these specific facts. Because no binding authority in 2019 had rejected a visual body cavity search on comparable facts, and several Second Circuit decisions had identified facts present in this case as supportive of reasonable suspicion, the law in this circuit did not "clearly foreshadow[]" the conclusion that reasonable suspicion was lacking here, *Gorman*, 910 F.3d at 45, such that no reasonable officer could have believed a search was legally justified. Detectives Kobus, Sergeant Gatto, Detective Grenier, and Detective Morales are therefore entitled to summary judgment on plaintiff's Fourth Amendment claim. In addition, Detective Kobus is entitled to summary judgment on plaintiff's failure-to-intervene claim because "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quotation marks and citation omitted).

### III. Plaintiff's Fourth Amendment Claim Against the City of New York

Defendants move for summary judgment on plaintiff's Fourth Amendment claim against the City on the theory that plaintiff has failed to establish an underlying constitutional violation, Defs.' MSJ 19, while plaintiff requests summary judgment on the theory that he has established such a violation, Pl.'s Opp'n 15. But the Court's analysis above merely determines that the individual defendants are entitled to summary judgment on plaintiff's underlying Fourth Amendment claims on the basis of qualified immunity. And "the entitlement of the individual municipal actors to qualified immunity" is "irrelevant to the liability of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). "Municipalities are held liable if they adopt customs or policies that violate federal law and result in tortious violation of a plaintiff's

11

rights, regardless of whether it was clear at the time of the adoption of the policy or at the time of the tortious conduct that such conduct would violate the plaintiff's rights." *Ibid.* Yet neither party's brief addresses the existence of an official custom or policy.

The parties are therefore directed to file supplemental letters, not to exceed five pages, within thirty days addressing whether plaintiff was subjected to a visual body cavity search pursuant to an official custom or policy. A plaintiff can allege a municipal custom or policy by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). The parties' supplemental letters should address whether, under those standards, either party is entitled to summary judgment on plaintiffs' claim that the City of New York violated his Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiff's fair trial claim as well as his Fourth Amendment claims against the individual defendants. As set out above, the parties are directed to file supplemental letters within thirty days addressing plaintiff's remaining Fourth Amendment claim against the City of New York.

Because there are no remaining claims against Detective Kobus, Detective Rodriguez, Undercover Officer No. 331, Detective Greiner, Detective Morales, and Sergeant Gatto, the

Clerk of Court shall terminate those defendants from the docket.

    SO ORDERED.

                                           */s/ Rachel Kovner*
                                           RACHEL P. KOVNER
                                           United States District Judge

Dated:  March 29, 2024
         Brooklyn, New York